SENTER v. WILLIAMS.

Opinion delivered October 19, 1895.

CREDITOR'S BILL—INTERVENTION—PRIORITY.—Where a bill is filed by
several creditors to set aside a fraudulent conveyance by the
debtor, and a decree rendered annulling the conveyance, and di-
recting the assets to be distributed among plaintiffs, other credit-
ors will not subsequently be permitted to intervene and share
ratably in the distribution, but will be postponed to the prior rights
of plaintiffs.

CREDITOR'S BILL—PARTIES.—Where, in a creditor's bill to set aside a
fraudulent conveyance by an insolent debtor, a receiver is ap-
pointed to take charge of the debtor's estate, creditors to whom
the debtor had assigned the purchase money notes for lands sold
by him before execution of such conveyance, as well as the pur-
chasers of such lands, are necessary parties to a distribution of
rents collected therefrom by the receiver.

Appeal from Hempstead Circuit Court in Chanrery.

RUFUS D. HEARN, Judge.

STATEMENT BY THE COURT.

Baird & Caruth, merchants at Washington, Hemp-
stead county, failed in business, and made a general
assignment. Virginia J. Williams, one of the preferred
creditors, filed, in behalf of herself and all other cred-
itors, a suit setting up that the assignee had been unable
to make bond, and praying for the appointment of a
receiver. The assignee was appointed receiver.

Barbara Hubbard, and two other creditors of Baird
& Carruth, filed in the suit their cross complaint, in the
nature of a creditors' bill, on behalf of themselves and
all other creditors of the assignors who might wish to
join them, alleging that the assignment was fraudulent,
because the assignors had intentionally withheld a part
of their property, and for other reasons. Several cred-
itors, including the original plaintiff, came in and
adopted the allegations of the cross-complaint.

Upon a hearing the assignment was adjudged to be fraudulent, and was set aside, and it was ordered that the receiver distribute the proceeds of the property among the creditors who had intervened.

After the decree, and before the fund had been distributed, Senter & Co. intervened, setting up that they had a claim upon which they had recovered judgment in the sum of $50,000 against Baird & Caruth, and praying that they be allowed to share in the distribution. Their petition was disallowed. On the same day they filed another intervention, alleging that, as security for their indebtedness, and before the failure, Baird & Caruth had transferred to them a note of one Phillips, secured by mortgage, and that the receiver had collected the rent on the mortgaged land, amounting to $140, when the land had never belonged to Baird & Caruth, and said moneys should go to Senter & Co.; that Baird & Caruth, before the failure, sold another tract to one Faucette, and transferred the purchase lien money notes to Senter & Co. as security, but that the receiver had taken possession of the land, rented it to Faucette, and collected the rents, amounting to $40; that Baird & Caruth had sold some land to Parker & Rike, and transferred the purchase money lien notes to Senter & Co., and that the receiver had taken possession of said land, rented it to Parker & Rike, and collected the rents, amounting to $90; that Baird & Caruth sold one Sexton another tract, and transferred the purchase money lien notes to Senter & Co. before their failure, but that the receiver had taken possession of the land, and collected the rents, amounting to $250; that Baird & Caruth had sold another tract to one Mitchell, and had transferred the purchase money lien notes to Senter & Co. before their failure, but that the receiver had taken possession of said land, rented it to said Mitchell, and collected the rent, amounting to $50; that

Baird & Caruth are insolvent; that said lands and the other securities of Senter & Co. are inadequate to protect them; that the money was collected by the receiver without their knowledge or consent; and they pray that the amounts of rents collected, whether in money or notes, be turned over to them. This intervention likewise was denied, and Senter & Co. have appealed from both decrees.

*Rose, Hemingway & Rose* and *J. H. Arnold*, for appellants.

1. The court erred in refusing to allow Senter & Co. to participate in the distribution. 2 Dan. Ch. Pl. & Pr. 1205; 1 Beach, Mod. Eq. Pr. sec. 576; 111 U. S. 641; 4 Johns. Ch. 617; 45 N. J. Eq. 77; 46 *id.* 237; 19 Atl. 22; 25 *id.* 885; 44 Fed. 117; 56 *id.* 7, 10. This was a creditor's bill on behalf of herself and all other creditors, and not alone for the benefit of the creditor alone. Other creditors could come in and share with him, on payment of their share of costs, *at any time before distribution.* Cases *supra.*

2. It was error to refuse the second intervention of appellant. Baird & Caruth had no interest in the land, and the receiver no right to possession or rents. The debt was assigned, and the lien went with it. 29 Ark. 218; 26 *id.* 506; 31 *id.* 140. When the security is inadequate, the holder is entitled to the rents. High on Receivers, sec. 666.

*J. W. House*, for Barbara Hubbard; *J. D. Conway* and *W. S. Eakin*, for the other apellees.

1. This was not a bill for all creditors, but only for those who *may wish to join herein, and ask to be made parties, etc.*; that is, for all creditors who desired to defeat the assignment, and who joined *for that purpose.* Those who first file a bill have a lien on the funds uncovered. 130 Ill. 102; 31 W. Va. 156; 27 Mo.

App. 642; 2 Paige, N. Y. Ch. 567; 1 *id* 308; 7 Dana (Ky.), 110; 9 Paige, Chy. (N. Y.) 74; 3 *id.* 365; 10 *id.* 9; 9 *id* 512; 2 Sandf. Ch. (N. Y.) 520; 25 Barb. 662; 30 W. Va. 443; 27 Gratt (Va.) 479; 4 Johns. (N. Y.) Chy. 687; 46 Ill. 277; 93 *id* 396; 22 W. Va. 443; 2 Beach, Mod. Eq. Pr. 913; Wait, Fr. Conv. sec. 68; 38 Ark. 28; 55 Ark. 116; 40 Ill. App. 319; 30 W. Va. 455; 26 Mo. 193; 2 Beach, Mod. Eq. Pr. sec. 900; 31 W. Va. 156; 29 Ill. 24; 2 Freem. Judg. sec. 350–394; 55 Ark. 116; 50 *id.* 108; 57 *id.* 579; Bump, Fr. Conv. (2 ed.) p. 465; 1 Black, Judg. secs. 401–2–3, 419, 420; 79 Ala. 590.

2. Prior liens at law are preferred in equity in the distribution. 10 Johns. 522; 3 How. Pr. 185; 14 How. 67; 49 Ark. 117; 27 Gratt. 487. Mr. Hubbard and other intervening creditors could have proceeded to sell the property assigned under execution, but the better practice is first to uncover the fraud by bill in equity. 42 Ark. 305; 33 *id.* 762; 39 Am. Dec. 453; Drake, Att. (4 ed.) sec. 225. When lands have been conveyed in fraud of creditors, a judgment afterwards acquired is a lien, and the creditor has three remedies. 36 Minn. 494; 19 N. Y. 396; 10 N. J. Eq. 437; 13 Wis. 324; 2 Cal. 524; 19 Fed. 589; 96 Mo. 216. The cases cited by counsel refer to case where assets in the hands of an administrator were sought to be reached. The rule is different then, for the law settles the distribution. 39 Ark. 117; 16 *id.* 474; 4 Am. & Eng. Enc. Law, 580; Story, Eq. Pl. sec. 99; 2 Story, Eq. Jur. sec. 890; 4 Johns. Ch. 620; *Ib.* 643. Beach, Eq. Pr. sec. 577, states the rule in this case.

3. The court properly refused the second intervention. Senter & Co. had a lien on the lands, but they were not entitled to possession of the real estate, nor to the rents. Before they could have a receiver to take charge of the lands, they would have to allege, (1) that the lands were inadequate security, and (2) that the

mortgagor or lienor was insolvent. They allege inad-
equacy, but not the insolvency; this is fatal. High on
Receivers, sec. 611–666. Ware, the assignee, was the
legal owner of the lands, and it was his duty to take
charge of them, Senter & Co.'s remedy being by bill to
foreclose their lien. 33 Ark. 377 ; 29 id. 358 ; 43 id. 464.

4. The decree was final, so far as the intervening
creditors were concerned, and the court had no power to
open it up to allow Senter & Co. to participate. 1 Black,
Judgm. secs. 41–2–3–4, etc., and note 101, and sec. 48;
6 How. 201 ; 109 U. S. 180 ; 7 Wall. 342 ; 7 Paige, Ch.
18 ; 4 id. 261 ; 11 id. 189 ; 52 Ark. 224 ; 34 id. 117.

5. Senter & Co. could not stand by with folded
hands, and let others fight the battle at their own cost,
and, when the battle was won, come in and share the
fruits. They should have joined, and helped, and taken
their chances. Wait, Fr. Conv. sec. 392 ; 2 Freeman,
Judgm. sec. 350 ; High, Receivers, sec. 461 ; 11 Biss.
340 ; 1 Paige, 639 ; 31 W. Va. 156, 161.

HUGHES, J., (after stating the facts.) Though it
is the favorite policy of a court of equity to distribute
assets equally among creditors *pari passu*, yet, whenever
a judicial preference has been established, by the su-
perior legal diligence of any creditor, that preference is
always preserved in the distribution of assets by the
court. *McDermutt* v. *Strong*, 4 Johns. Ch. 687. Here
the appellees, to whom the reward of diligence was
granted, filed their bill to set aside the assignment for
fraud, and succeeded. The appellants contented them-
selves with standing by and seeing the appellees carry
on the contest at their own labor and expense. This
seems to come within the maxim, "*Vigilantibus, non
domientibus, jura subveniunt.*" "The creditor who first
files his bill obtains thereby a priority, and is entitled
to be first paid out of the proceeds of the assets, if

Right of
creditor to
intervene in
creditor's bill.

there are no valid prior liens. *Clark* v. *Figgins*, 31 West Va. 157, and cases there cited.

Section 577, Beach, Mod. Eq. Pr., lays down the rule as follows : "A creditor, who delays asking to be admitted as a complainant until after the case has been finally heard, should be admitted, unless his admission is by consent, only on condition that those who have expended their labor and incurred the risk of trying the case be first paid." In the case of *Smith* v. *Craft*, 11 Biss. 340, Judge Gresham maintained that, "after the announcement of the finding of the court in favor of the complainants attacking the fraudulent preference, if other creditors come in and ask to be made parties to the suit as co-complainants, this may be done, but their claims will be postponed in favor of the original complainants." "It is clear that creditors filing a bill to set aside a fraudulent conveyance acquire a specific lien, and are entitled to priority over other creditors at large." *Wallace* v. *Treakle*, 27 Gratt. 487.

The intervening creditors here obtained judgments on their claims at the April term of the circuit court for 1893, and caused executions to be issued thereon and placed in the hands of the sheriff of the county, and they were held by the sheriff at the time of the final decree in this cause. They thus obtained liens on all the assigned property, subject to be seized on execution, and they thereby obtained priority over Senter & Co., who did not obtain judgment till the October term of court next thereafter.

A fraudulent conveyance, though good between the parties, passes nothing as against creditors. 2 Bump on Fraudulent Conveyances, 465 ; Freeman on Judgments, 350, 394 ; *Stix* v. *Chaytor*, 55 Ark. 116 ; *McNeill* v. *Carter*, 57 Ark. 579.

When the law gives priority, equity will follow it. *Codwise* v. *Gelston*, 10 Johns. 522 ; *Wiswall* v. *Sampson*,

14 How. 67; *Wormser* v. *Merchants National Bank*, 49 Ark. 117; *Wallace* v. *Treakle*, 27 Gratt. 487.

"When a bill is filed by judgment creditors, in behalf of all judgment creditors, to reach property which could not be effectively reached at law, as in suits against an administrator to reach assets fraudulently conveyed by the deceased in his lifetime, and where the statute provides that the assets in the hands of the administrator shall be held subject to the payment of debts in the order prescribed by statute, * * * * * it is well settled that no preference can be obtained by filing a creditor's bill first. Upon the death of a person, his estate is at once charged with the payment of all debts, to be paid under the statute, according to class, *pro rata*." *Clark* v. *Shelton*, 16 Ark. 474; *Jackson* v. *McNabb*, 39 Ark. 117; 2 Story, Eq. Jur. sec. 890; *Thompson* v. *Brown*, 4 Johns, Ch. 620. Several cases of the kind last mentioned are cited by counsel for the appellant, but they are not applicable to the case at bar.

The complaint to set aside the assignment for fraud in this case was brought by the intervenors named therein as plaintiffs, and in behalf of all other creditors of the assignors who might wish to join therein. The appellants did not propose to become parties, or to intervene, until after final decree setting aside the assignment as fraudulent, and ordering the assets distributed to the original complainants in the bill to set aside the assignment. They were therefore properly refused the privilege of sharing *pro rata* in the distribution of the assets uncovered by the suit of the original intervenors without their assistance. There is no error in the court's decree on this ground.

We are of opinion that, upon the offer of Senter & Co. to intervene and contest the distribution of the rents of lands, which had been sold by Baird & Caruth

As to parties to creditor's bill.

before the assignment, and for which they had made bonds for title, and the purchase money notes for which they had, assigned to Senter & Co., the purchasers of these lands, and Senter & Co. should have been made parties, that their respective equities might be determined by the court. It is apparent that neither Baird & Caruth, nor Ware, the assignee, had interest in these lands, as they were sold by Baird & Caruth before the assignment, and the notes for the purchase money had been assigned by Baird & Caruth, before the assignment, to Senter & Co. After they were sold by Baird & Caruth, they held merely the legal title in trust, to be conveyed to the purchasers when the purchase money should be paid. When the notes for the purchase money were assigned to Senter & Co., they became thereby entitled to the vendor's lien for the payment of the notes. It is clear, therefore, that the equities as to those lands were between the purchasers and Senter & Co. It was not equity to distribute these rents to Baird & Caruth's general creditors. This part of the decree is reversed, with directions that the purchasers of these lands be made parties. Otherwise the decree is affirmed.