DOSTER *v.* MANISTEE NATIONAL BANK.

Opinion delivered January 13, 1900.

1. JUDGMENT—LIEN—PRIORITY.—A judgment is not a lien upon land which the judgment debtor has conveyed in fraud of his creditors, and a junior judgment creditor who first brings suit in equity to uncover such property will acquire a first lien on its proceeds. (Page 328.)

2. FRAUDULENT CONVEYANCE—EFFECT.—Under Sand. & H. Dig., § 3472, declaring that every conveyance of land made with intent to defraud creditor "shall be void" as against them, a fraudulent conveyance is not void absolutely, but conveys legal title, subject to the creditors' right to avoid it for fraud. (Page 329.)

Appeal from Pulaski Chancery Court.

GEO. W. WILLIAMS, Special Chancellor.

*Cockrill & Cockrill,* for appellant.

Appellant did all that the law required of him to assist appellee in its suit; hence he is entitled to share in the proceeds thereof. 137 Ind. 282, 284. Cf. 61 Ark. 199. The rule in this state is that the prior judgment creditor has a lien on property conveyed in fraud of creditors, paramount to that acquired by a subsequent judgment creditor who uncovers the property. 14 Ark. 69; 55 Ark. 116, 123; 57 Ark. 579; 49 Ark. 117; 50 Ark. 108; 33 Ark. 762; 23 Ark. 746, 759; 46 Ark. 542. Such conveyances are, in respect to judgment liens, treated as though they had never been made, and the title is considered as still in the debtor. Fr. Judg. § 350; Bl. Judg. § 423; Fr. Executions, § 207. Appellant's priority being fixed by law, equity will enforce it. 61 Ark. 199; 3 How. Pr. 185; 19 N. Y. 369; 96 Mo. 216; 36 Minn. 494; 67 Pa. St. 434. To the point that the *scire facias* kept alive the lien of appellant judgment, see Sand. & H. Dig., § 4214; 13 Ark. 543, 557; 15 Ark. 73, 88; 45 Ark. 304; 19 Ark. 297. It was unnecessary for appellant to issue an execution which would have been fruitless. 11 Ark. 411, 418; 27 Ark. 637, 641; 56 Ark. 476,

481.   Mere delay to sue out process on a judgment does not affect the lien.   18 Ark. 142, 156.

*Dodge & Johnson, Carroll & Pemberton*, and *D. H. Cantrell*, for appellee.

Priority in time is enforced only when the equities are equal, and does not apply to a case where the prior judgment creditor has, by negligence or *laches* sunk his equity below that of a more diligent junior creditor.   31 Ark. 600.   This latter took place in the case of *Stix* v. *Chaytor*, 55 Ark. 116. The other cases cited by appellant do not involve any contest between judgment creditors, and are not in point.   If, as in 55 Ark. 166, *supra*, the prior judgment creditor's claim could be sunk by *laches*, below the equity of an innocent purchaser, it should be made to yield to that of a more diligent but junior creditor.   29 Ill. 27;   51 Ark. 418;   33 Ark. 328;   Bl. Judg. § 455.

WOOD, J.   This suit is between judgment creditors of Geo. R. Brown to determine which of them has the superior right to certain lots in Little Rock.   Appellant obtained judgment against Brown May 16, 1893, and had *scire facias* issued and served to revive same February 11, 1896, and judgment of revivor was rendered May 25, 1896.   Appellee obtained its first judgment against Brown June 7, 1893, and the second May 10, 1895.   Execution was issued on these October 29, 1895, and same was returned *nulla bona*.   On the same day (October 29, 1895) appellee filed a complaint for itself alone, to uncover certain property, including the lots in controversy alleging that same had been conveyed by Brown in fraud of creditors.   On December 21, 1896, appellant filed his intervention in appellee's suit, setting up his judgment lien, alleging that he was willing to *contribute to the expenses of the action*, that Brown was insolvent, and that an execution against him would be of no avail, and asking to be allowed to share in the proceeds of the creditor's bill filed by appellee.   Appellee's answer to the intervention of appellant alleged a specific lien on the property by reason of the complaint filed by it, and asked that the rights of appellant under his judgment be

subordinated to its lien. At the time of the filing of appellant's intervention, appellee agreed with him that the assistance of his attorney in the prosecution of the creditors' suit would be waived, and that in the contest between them it would be considered as though appellant had rendered all the assistance that the law would require. Appellant filed a written assumption of his share of the costs. It was understood that all controversy between appellant and appellee as to their respective rights in the proceeds, if any, of the creditor's suit against Brown *et al.* should be postponed until that issue was settled. No execution was issued by appellant until long after the present suit had been brought, and appellant's intervention had been filed. The decree on the original complaint and answer subjected the lots in controversy to the payment of Brown's debt. Of these lots some were conveyed before and some after the rendition of the judgments.

The appellant contends that, as senior judgment creditor, he is entitled to have applied to the satisfaction of his judgment the entire proceeds from any sale that may be had of the lots which were fraudulently conveyed prior to the rendition of the judgment of either party. He grounds his contention upon the following sections of the Digest (Sand. & H.):

"4204. A judgment in the supreme, chancery or circuit court of this state or of the district or circuit court of the United States shall be a lien on the real estate *owned by the defendant* in the county in which the judgment was rendered from the date of its rendition."

"3049. The following described property shall be liable to be seized and sold under any execution upon any judgment, order or decree of a court of record:    *    *    *·    *
*Sixth.* All real estate, whether patented or not, whereof *the defendant, or any person for his use, was seized in law or equity on the day of rendition of the judgment,* order or decree whereon execution issued, or at any time thereafter."

Appellant also relies upon the following decisions of this court: *Ringgold* v. *Waggoner,* 14 Ark. 69; *Apperson* v. *Ford,* 23 Ark. 746, 759; *Bennett* v. *Hutson,* 33 Ark. 762; *Hershy* v. *Latham,* 46 Ark. 542; *Wormser* v. *Merchants' National Bank,*

49 Ark. 117; *Cohn* v. *Hoffman*, 50 Ark. 108; *Stix* v. *Chaytor*, 55 Ark. 116, 123; *McNeil* v. *Carter*, 57 Ark. 579.

The statute gives a lien from the day of the rendition of the judgment upon the real estate *owned* by the defendant, or whereof *he or any person for his use, is seized in law or equity.* Where a debtor has fraudulently conveyed his real estate before any judgment is rendered against him, or has procured same to be fraudulently conveyed to another, he is not in any sense the owner of such real estate, nor is he thereafter seized in law or equity of such real estate, nor is the grantee seized for his use. The authorities generally recognize the fact that a deed to land, although fraudulently conveyed, carries the title of the grantor. The deed is good *inter partes.* *M°ux* v. *Anthony*, 11 Ark. 411; *Millington* v. *Hill*, 47 Ark. 309; *Bell* v. *Wilson*, 52 Ark. 171; Bump, Fr. Conv. §§ 432, 433; Wait, Fr. Conv. §§ 395–99; 8 Am. & Eng. Enc. Law, (1 Ed.), p. 771 and authorities cited by these.

The fraudulent grantee gets a title that he can alienate, and by so doing confer a perfect title upon his alienee, if the alienee be an innocent purchaser for value. This is the doctrine of our own court, and of nearly all the states. *Ringgold* v. *Waggoner*, 14 Ark. 69; *Stix* v. *Chaytor*, 55 Ark. 116, 123; Wait, Fr. Con. § 386; Bump, Fr. Con. § 492, and numerous authorities cited.

Of course, this would not be possible if the conveyance of the fraudulent grantor did not carry the title to the fraudulent grantee. It follows, then, logically and necessarily, that, under this statute alone, the judgment creditor has no lien upon lands fraudulently conveyed by the debtor prior to the rendition of his judgment. This construction certainly conforms to the plain and unequivocal language of the act. Why should we so change and extend it as to make it apply to lands which the defendant at the time of the rendition of the judgment did not own, and of which neither he, nor any one for him, was seized in law or equity? To so construe it would be judicial legislation, and that too with unjust results, because "when the law gives priority, equity will follow it" (*Senter* v. *Williams*, 61 Ark. 189); and, in passing upon the rights of judgment creditors to lands fraudulently con-

veyed prior to the rendition of the judgments, the effect would be to ignore that old and excellent maxim of equity, *Vigilantibus, non dormientibus, æquitas subvenit,* and to declare in favor of those merely prior in time, although ever so unequal in diligence. Such a doctrine would encourage fraudulent judgments. It would impose oftentimes upon the junior judgment creditor the expensive, but still thankless and bootless, task of uncovering assets, which, by his diligence, he had discovered, for the benfit of another, or else the disagreeable experience of seeing the fraudulent debtor concealing and appropriating to his own use assets which justly belonged to his creditors.

But, while the language of the statute itself is plainly against a construction which would lead to such inequitable consequences, appellant, to sustain his contention for a lien, would have us construe section 3472 of Sandels & Hill's Digest as *in pari materia,* and to hold that his judgment was a lien on Brown's estate, just as though the legal title had been all the time in Brown. The section referred to is as follows: "Every conveyance  *  *  *  of any estate or interest in lands, made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers, prior and subsequent, shall be void." If the latter statute is to be taken as *in pari materia* with the statute under consideration as between judgment creditors and their debtors, still that cannot aid appellant. Ever since the passage of the 13th of Elizabeth, after which our statute as to fraudulent conveyances was modeled, the word "void," as therein used, has generally been held to mean "voidable." Mew's Eng. Case Law Digest, 338, and authorities collected; Pom. Contr. § 282, and authorities cited; Bump, Frd. Conv. § 451, and authorities cited in note 1.

As we have seen *supra,* such is the view of our own court; and this is undoubtedly correct, for every fraudulent conveyance carries the legal title subject only to defeasance by *creditors and purchasers.* Such conveyance is not *void per se,* even as between the debtor and creditor; much less between creditor and creditor. Even as between the debtor and creditor, if the

creditor condones the fraud, and takes no step to avoid the conveyance, it stands forever as a divestiture of the title of the debtor. Nor will the mere rendition of a judgment in favor of the creditor against the debtor avoid the latter's fraudulent conveyance. The judgment simply fixes the amount of the debtor's liability for which is subject the property *he actually owns, or of which he, or some one for him, is seized and possessed.*

Nor do courts of law annul and set aside fraudulent conveyances. Some process, after judgment at law is rendered, is necessary in order to fix and secure a lien upon property that has been fraudulently conveyed, and to uncover it for the judgment creditor.

In some jurisdictions the creditor has choice of three remedies. "First, he may sell the debtor's land upon execution, and leave the purchaser to contest the validity of the defendant's title in an action of ejectment; or, secondly, he may bring an action in equity to remove the fraudulent obstruction to the enforcement of his lien by execution, and await the result of the action before selling the property; or, thirdly, he may, on return of an execution unsatisfied, bring an action in the nature of a creditor's bill to have the conveyance adjudged fraudulent and void as to his judgment, and the land sold by a receiver or other officer of the court, and the proceeds applied to the satisfaction of the judgment, as, in the case of equitable interests, the debtor's assets are reached and applied." So it is said by the Supreme Court of Minnesota in *Jackson* v. *Holbrook*, 36 Minn. 494; also in *Erickson* v. *Quinn*, 15 Abb. Prac. N. S. 166.

Those states which hold, under statutes similar to ours, that a judgment is a lien upon property fraudulently conveyed prior to its rendition may very properly and consistently adopt the first of the above-named remedies, to-wit: to sell the debtor's land upon execution, and leave the purchaser to contest the validity of the defendant's title in an action of ejectment. But it is apparent that, if the conveyance is to be treated, upon the simple rendition of a judgment, as though it had never been made, and the property, notwithstanding such conveyance, is still the debtor's, then it is inconsistent to say, and idle and

useless to hold, that the creditor may elect to adopt the above remedy, or go into chancery *"to remove the fraudulent obstruction* to the enforcement of his lien by execution, or bring a creditor's bill to have the *conveyance adjudged fraudulent and void as to his judgment."* For if the property so fraudulently conveyed is nevertheless still *owned and seized by the debtor,* then an execution on the judgment at law will reach it, and there is in fact no *fraudulent obstruction* to the enforcement of his lien *by execution,* and there is no necessity for a creditor's bill to have the *conveyance adjudged fraudulent and void as to his judgment,* because there is nothing that obstructs the enforcement of such judgment at law.

The courts which fall into such glaring incongruities in prescribing the remedies under this statute are no more discriminating, logical and consistent when discussing the principles upon which the rights are founded giving rise to the remedies. All the authorities which hold that a judgment creditor has a judgment lien upon land which has been fraudulently conveyed by the debtor prior to the rendition of the judgment are grounded upon the egregious fallacy that a fraudulent conveyance is not *voidable merely, but absolutely void. Slattery* v. *Jones,* 96 Mo. 216; *Jackson* v. *Holbrook,* 36 Minn. 494; Freeman, Ex. § 136, and authorities there cited; *Jacoby's Appeal,* 67 Pa. St. 434; Bump, Frd. Conv. § 530.

That a lien may be fixed by the levy of an execution on lands which have been fraudulently conveyed by a debtor prior to the rendition of the judgment against him, and that such lien may be made productive by a sale of the property under the writ, without seeking the aid of chancery, as is held by some authorities (*Smith* v. *Osgood,* 46 [N. H. 178; *Burnett* v. *Handley,* 8 Ala. 685; 1 Freeman on Ex. § 207), does not at all conflict with the idea that there is no statutory judgment lien on such property. We must discriminate properly between the statutory judgment lien and the lien acquired by virtue of an execution issued under a general judgment, as in the numerous cases cited by Mr. Freeman in note 1 to section 136 of his work on Executions. Mr. Herman in his work on Executions, at page 265, says: "Where the judgment is a

lien on lands, there can be no independent lien acquired by the issue of an execution. But where land is seized by virtue of a judgment, which is no lien, the execution becomes a lien." As was said by the supreme court of Pennsylvania, "A lien is, indeed, a necessary and inseparable incident of seizure in execution, except where the execution is merely instrumental in enforcing a prior and superior lien by judgment. In such case, it never was supposed by the legislature, or the profession, that a judgment and an execution on it had each a distinct and independent lien." *Davis* v. *Ehrman*, 8 Harris, 256. We maintain that there is no statutory judgment lien on lands which have been fraudulently conveyed before the rendition of judgment, the debtor no longer owning, or being possessed or seized of, such property, either in law or equity. Whether liens may be acquired by *executions* on judgments against such debtors, and in various other ways, it does not boot us here to discuss. We do not hesitate, however, to say that the method of attacking a fraudulent conveyance of land by levying an execution on same, and then proceeding to sell same under the writ, leaving the purchaser to contest the validity of the conveyance in an action of ejectment against the fraudulent vendee, is not to be encouraged. It is circuituous and cumbersome, and at last leaves a cloud upon the record title; for a court of law can never cancel and set aside a fraudulent conveyance. As was held by this court in *Sale* v. *McLean*, 29 Ark. 612, quoting from syllabus: "Where a judgment creditor seeks to subject land which the debtor has conveyed fraudulently, the proper practice is to exhaust the process of the court, and apply to a court of equity for aid before a sale.

We are not without abundant and excellent authority to support the construction for which we contend. Sec. 13 of 1 and 2 Vict., c. 110, provides, in effect, that a judgment against any person shall operate as a charge upon all lands "of or to which such person shall, at the time of entering up such judgment, or at any time afterwards, be seized, possessed, or entitled for any estate or interest whatever at law or in equity," etc. The statute under consideration was modeled af-

ter this. In *Beavan* v. *Earl of Oxford*, 6 De G., M. & G. at p. 514, Lord Chancellor Cranworth says: "The question which was reserved for consideration in this case relates to the priority of three judgment creditors of the late Lord Oxford, * * and the point is whether, by virtue of the statute of Elizabeth alone, or by virtue of it combined with the statutes of the present Queen [Victoria], these judgment creditors have or have not a right against the parties claiming under a voluntary settlement executed by Lord Oxford in the year 1838." After holding that a judgment creditor is not a purchaser under the statute of 27th Elizabeth concerning fraudulent conveyances, and not entitled to protection as such against a prior voluntary conveyance, the Lord Chancellor proceeds as follows: "Now, what did the legislature mean to do by that enactment? In the first place, they meant to make the judgment directly operate as a charge, but a charge on what? I apprehend that there was no principle inducing them to mean, and that the words do not represent them as having meant, to give the judgment creditor any right except against his debtor; that is, the judgment was to have the effect of a charge on that which was the property of the debtor. That, I think, is manifest from the words used. The judgment is to operate on land of which the debtor is seized," etc. Other concurring opinions were delivered by the Lord Justices. The case is a very instructive one, and is an early and able vindication of the exact construction for which we here contend. See also *Eyre* v. *McDowell*, 9 H. L. Cas. 619.

In *Dolphin* v. *Aylward*, 4 Eng. & Ir. Appeals, Law Rep. 486, it is held that, "where a voluntary settlement has been made, subsequent judgment creditors of the debtor cannot acquire rights in derogation of it which the settlor himself would not have possessed." At page 500, the Lord Chancellor said: "And it is quite settled that a judgment creditor can take no interest whatever, either legal or equitable, beyond what he acquires from the debtor; such an interest, in fact, as the debtor himself could give, and no other."

Mr. Freeman, in the 4th Edition on his work on Judg ments, which is later than the 2d Edition of his work on Exe-

tions, which he cites, says: "In some of the states a judgment is a lien against lands fraudulently conveyed for all purposes, and cannot be displaced in favor of any junior judgment or other lien, the holder of which first proceeds either at law or in equity to seek satisfaction out of the property so conveyed." "But", he continues, "we think the better rule is that one who has not, by levy or otherwise, taken any further steps to obtain satisfaction out of property fraudulently transferred has no lien thereon. * * * On the contrary, the creditor who first proceeds in equity to reach property fraudulently transferred thereby obtains a right to priority, to which the claims of other judgment creditors, whether prior or subsequent, must give precedence." Freeman, Judgments, § 350, p. 640.

*In re Estes*, 3 Fed. Rep. 134, Judge Deady, after a most satisfactory review of authorities pro and con, sums up the whole matter as follows: "In my own opinion, the lien of a judgment which is limited by law *to the property of or belonging to the judgment debtor* at the time of the docketing does not, nor cannot, without doing violence to this language, be held to extend to property previously conveyed by the debtor to another by deed valid and binding between the parties. A conveyance in fraud of creditors, although declared by the statute to be void as to them, is nevertheless valid as between the parties and their representatives, and passes all the estate of the grantor to the grantee, and a *bona fide* purchaser from such grantee takes such estate, even against the creditors of the fraudulent grantor, purged of the anterior fraud that affected the title. Such a conveyance is not, as has been sometimes supposed, entirely void, but is only so in a qualified sense. Practically, it is only *voidable*, and that at the instance of creditors proceeding in the mode prescribed by law, and even then not as against a *bona fide* purchaser." See *In re Estes* etc., 6 Saw. 459. Other authorities are *Rappleye* v. *International Bank*, 93 Ill. 396; *Boyle* v. *Maroney*, 73 Ia. 70; *Howland* v. *Knox*, 59 Ia. 276; *Bridgman* v. *McKissick*, 15 Ia. 260. Black, Judg. § 455; *Smith* v .*Lind*, 29 Ill. 27.

The learned counsel for appellant says that "appellant had a prior and paramount lien over appellee on all lands acquired

by Brown before the rendition of appellee's judgments, although the title was fraudulently taken in the name of other persons," and he contends that this doctrine "is established by numerous cases in this court, beginning with *Ringgold* v. *Waggoner*, 14 Ark. 69, and ending with *Stix* v. *Chaytor*, 55 Ark. 116. With due deference, we think counsel are mistaken both as to what the law is, and what we have decided. Brown, as we have endeavored to show, no longer had any interest, either legal or equitable, in lands after he, as the owner in fee, had fraudulently conveyed them. Nor did he have any equity in lands purchased by him whereof the legal title was taken in the name of another, in order to defraud creditors. This was, in effect, the same as though the legal title had first been taken in the name of the debtor, and thereafter he had transferred same to another to defraud creditors. Hence all we have said applies to such conveyances. But those authorities which hold that a judgment is a lien on the land which the debtor has previously conveyed in fraud of creditors, upon the theory that such conveyance is void, and is to be treated as though it never had been made, leaving the legal title still in the debtor, are not applicable to conveyances where the legal title never has been in the debtor. For, says Mr. Freeman, "if the transfer were treated as void, the title would remain in the person of whom the purchase was made; and this would be of no advantage to the creditors. The transfer must therefore be treated as valid, and as transmitting the legal title to the person named in the deed. This legal title cannot be reached by the levy of an execution against the debtor, because he has never owned it. The creditor must therefore resort to equity, except in a few states where statutes have been enacted to enable them to reach it at law." 1 Freeman, Ex. § 136, p. 137.

The only theory for holding, under the statute, that a judgment is a lien upon lands to which the debtor never held the legal title, but which were purchased by him and the title taken in the name of another to defraud creditors, is that of resulting trusts. But this theory is erroneous. For where a conveyance is made to defraud creditors, a resulting trust never arises in favor of the fraudulent debtor. He has no interest

thereafter that can be asserted either in law or equity. *Hearts* v. *White* (Ala.), 17 So. 185; *Proseus* v. *McIntyre*, 5 Barb. 425; *Vanzant* v. *Davies*, 6 Ohio St. 52; *Cutler* v. *Tuttle*, 19 N. J. E. 549; *Glidewell* v. *Spaugh*, 26 Ind. 319. Where property is conveyed without consideration, with a view of defrauding creditors, no trust will result. 1 Beach, Trusts and Trustees, § 125; 1 Beach, Mod. Eq. Jur. § 217; 1 Perry on Trusts, § 151; *Miller* v. *Davis*, 50 Mo. 572; *Baldwin* v. *Campfield*, 4 Halst. (N. J.) 891.

As to our own decisions, while there are expressions in some of the cases which seem to support the contention of appellant, we can not find that the question we have here, involving the priorities of judgment creditors, has ever been passed upon.

In *Ringgold* v. *Waggoner*, 14 Ark. *supra*, Ringgold filed his complaint in chancery to set aside certain alleged fraudulent conveyances from John W. Waggoner to his brother Edmond P. and from Edmond P. to one Burr. The complaint alleged, in substance, that Ringgold had sued John W. Waggoner at law for debt; that while this suit was pending, and before judgment, Jno. W. sold to Edmond P. the land in controversy, and that Edmond P. in turn sold to Burr, and that all these conveyances were for the purpose of defrauding Ringgold; that Burr had been notified, before getting his deed from Edmond P., that he (Ringgold) had obtained judgment against Jno. W. Waggoner, which was a lien upon the land in question, by reason of the fraudulent conveyance from Jno. W. to Edmond P., and that he intended to have the land sold under his judgment as the property of Jno. W., and that Burr in other ways had notice that the conveyance from John W. to Edmond P. was fraudulent; that, notwithstanding this notice, Burr had colluded with Jno. W. and Edmond P. to enable Jno. W. to defraud his creditors; that, the judgment at law in favor of Ringgold remaining unsatisfied, he had execution issued and levied upon the land as the property of Jno. W. Waggoner, and same was sold under such execution, and he (Ringgold) became the purchaser thereof; and that one Hooper, acting under the authority of Burr, was then in possession. The prayer was for a cancellation of all the conveyances, and

for possession, etc. Burr answered that he was an innocent purchaser. The court, discussing the character of the conveyance from Jno. W. to Edmond P., said it, as "against the complainant, was void, *and the judgment subsequently obtained by him became a lien upon the land as the property and estate of the fraudulent grantor, and the complainant, by his purchase of the land under execution, acquired a valid title to it as against the parties to the fraudulent conveyance.*" Continuing, Chief Justice Watkins said, "the only question in the case is whether the defendant, Burr, is entitled to be protected as an innocent purchaser;" and that was, indeed, true, for, the complaint being in equity to set aside fraudulent conveyances, it was not at all necessary for the decision of the case that the court should decide that complainant's judgment was a *lien* on the land, nor that he acquired a *valid title as against* the parties to the *fraudulent conveyance* by his purchase *under execution*. That was all true, even if the judgment was not *a statutory lien*. The creditor had an equitable lien.

*Stix* v. *Chaytor*, 55 Ark. 116, was also a suit in chancery by a judgment creditor to set aside certain conveyances alleged to be fraudulent. So much of the case as is pertinent here relates to a purchase of land by Chaytor, he paying the purchase money, and having the lands conveyed to his wife in order to defraud creditors. Speaking of this phase of the case, Judge Mansfield, for the court, said: "The purchase in the name of his wife can stand on no better footing; for the law regards it as in effect a conveyance from himself. But where land is thus purchased by a husband and conveyed to his wife in fraud of his creditors, the latter would not be benefited by treating the conveyance to her as void; since the title would then remain in the grantor. And equity will therefore treat the wife in such case as trustee for the benefit of the husband's creditors. Applying this doctrine to the present case, an estate in the lands purchased of Feazel resulted to Chaytor on the execution of the deed to his wife. *The estate which he thus acquired was subject to sale on execution under our statute, and the purchaser would have taken, not only the beneficial interest in the lands, but also the legal title. It follows, necessarily, we*

*think, that the lands in controversy,* while held by Mrs. Chaytor, were subject *to a lien* existing by virtue of *the plaintiffs' judgment.* \* \* \* Such a lien could not, however, be asserted against *bona fide* purchasers or encumbrancers." Here again it will be seen that it was wholly unnecessary to decide that *an estate* in the lands *resulted to Chaytor* on the execution *of the deed to his wife,* and that such estate *was subject to execution under our statute,* and that the purchaser thereunder *acquired the legal title,* and that the lands, while held by Mrs. Chaytor, *were subject to a lien existing by virtue of plaintiff's judgment.* These were not, in fact, germane to the issue, the only question before the court being, was the conveyance, as between the creditor and his debtor, fraudulent? and, if so, still were certain parties innocent purchasers? If the court meant by these dicta to hold, where a purchase of land is made by a debtor, and the conveyance is made to his wife at his instance in order to defraud creditors, that an estate results to the debtor upon the execution of the deed to his wife, and that a judgment rendered at law after such conveyance is a statutory lien upon such land, then we do not hesitate to declare all such dicta as unsound, and we will not follow them. Where a fraudulent conveyance is set aside by creditors, and the land is thereafter sold to satisfy their claims, should there be any residue after paying their debts, such residue does not go to the debtor, but to his fraudulent vendee. This shows the debtor has no estate in the land upon such conveyance. Bump, Fraud. Conv. § 450, and authorities cited.

We can easily see, as Judge Mansfield says, how the wife, or the fraudulent vendee, is held as a trustee for the *creditors.* But how she could be a trustee, so as to vest any estate, legal or equitable, in the debtor, is an altogether different matter. Probably both of these learned judges, after all, only had in view the *equity* which creditors have by proper proceedings to subject land which has been fraudulently conveyed to the payment of their debts. That creditors have such an equity is unquestioned, but they do not have it by virtue of the statute, but independent of it. Says Mr. Pomeroy, "In carrying out the general principle of trusts for the purpose of working

out ultimate justice, and reaching property where the legal title has been parted with, and is beyond the scope of legal process, a constructive trust is said to arise in favor of judgment creditors with respect to the property of their debtors, which has been transferred with the intent to defraud the creditors of their rights, or of which the legal title is vested in a third person with a like fraudulent intent, or which is of such a nature that it cannot be taken by execution upon judgments in legal actions." Continuing, in the note, he says: "The trust is in reality one in name alone; the creditor's right to reach the debtor's property is in no true sense an *interest* in that property; it is at most only an equitable lien on the property. 2 Pom. Eq. Jur. 1057.

In the other cases cited—*McNeil* v. *Carter*, 57 Ark. 579; *Cohn* v. *Hoffman*, 50 Ark. 108; and *Wormser* v. *Merchants' National Bank*, 49 Ark. 117—not only is the question of priorities not involved, but in each of these there might be said to be some equity remaining in the judgment debtor, bringing the case within the express terms of the statute.

*Hershy* v. *Latham*, 46 Ark. 542, and *Apperson* v. *Ford*, 23 Ark. 746, have no bearing that we can see in favor of appellant's contention. After a careful analysis and comparison of our own cases and all the other authorities at our command, we are of the opinion that judgment creditors have no lien by virtue of the statute upon lands which have been fraudulently conveyed prior to the rendition of their judgments, and that at least the proper, if not the only, remedy for them in such cases is to go into equity to uncover such conveyances, and that the creditor who exercises superior diligence in that regard by first bringing his suit and proceeding to uncover such assets is entitled to the proceeds. This seems to us to be eminently just, for intrinsically one creditor's judgment, fairly obtained, and based on a valid claim, is as meritorious as another. There is no merit in the mere time of rendition, for that depends often only upon the time of maturity of the debt. Besides, the one first in time is not prevented from being first also in diligence.

The chancellor held that appellee was entitled to the pro-

ceeds of the sale of the lands fraudulently conveyed prior to the rendition of the judgment of either party, but for different reasons than those we announce. In the view we have taken, it becomes unnecessary to discuss the reasons of the chancellor. The proceeds of the lands which were fraudulently conveyed after the rendition of the judgments he also gave to appellee, because of its superior diligence in first bringing its suit to uncover same. In this we think he was entirely correct, for the reason stated, and because in other respects the appellee showed far greater diligence. Finding no reversible error, the decree of the Pulaski chancery court is affirmed.

BATTLE and RIDDICK, JJ., dissent.