## STIX *v.* CHAYTOR.

Decided November 14, 1891.

1. *Fraud—Gift.*

A conveyance by one who is not indebted cannot be attacked by a subsequent creditor as fraudulent because it was voluntary.

2. *Fraud—Retention of possession by vendor.*

Where a vendor of a stock of goods remains in possession and continues the management of the business, a presumption of fraud arises which is not overcome by proof that the business was conducted in the name of the vendee, that the vendor's family supplies were charged to him, and that when the business was embarrassed, the vendee was appealed to for assistance ; it being shown that the vendee, who was the vendor's uncle, paid little attention to the business, and there being no proof that any valuable consideration passed.

3. *Creditors' lien—Filing complaint.*

Where a judgment creditor files his complaint to set aside a fraudulent sale of merchandise by his debtor and procures a summons to be served, a lien in his favor is created as to so much of the merchandise as remains in existence.                                 •

4. *Gift—Presumption of fraud.*

A voluntary conveyance by one who is indebted raises a *prima facie* presumption of fraud which becomes conclusive if the evidence fails to show that he had other property.

5. *Judgment—Lien on equitable estate.*   ·

When a debtor purchases land and takes deed to his wife, in fraud of his creditors, the land is subject to the lien of a judgment against him, which lien may be asserted against everybody except *bona fide* purchasers or incumbrancers who have acted upon the apparent title of the fraudulent vendee and without notice, actual or implied, of the fraud.

APPEAL from *Little River* Circuit Court in chancery. RUFUS D. HEARN, Judge.

In 1888, Stix, Krause & Co. brought suit against Chaytor & Dunn, formerly partners, and certain others, to set aside conveyances alleged to be fraudulent. The complaint alleged that in 1886 plaintiffs recovered judgment against Chaytor & Dunn, upon which execution was issued in 1888 and returned no property found; that defendant Chaytor, or Chaytor & Dunn, while insolvent, had made three several conveyances without consideration and with intent to defraud.  `

(1) It was charged that Chaytor, with assets of the firm, purchased a lot in the town of Richmond and fraudulently took deed to his wife. The evidence showed that in 1881 he purchased the lot with his own funds, and took deed to his wife ; but it was not shown that either Chaytor or Dunn, individually or jointly, owed any debts in that year, or that there was any fraudulent design on Chaytor's part. In the same year Chaytor and wife mortgaged the lot to secure a valid debt of Chaytor & Dunn. The debt and mortgage by assignment became the property of William Snodgrass, one of the defendants, who filed a cross-bill asking a foreclosure of his mortgage.

(2)  It was alleged that a sale by Chaytor of a stock of merchandise was fraudulent. The facts appear to be as follows: In 1882 Chaytor purchased the interest of his partner Dunn in a stock of goods owned by them.  Shortly afterwards he sold the stock to William Snodgrass, an uncle, who at the time of the sale and since has resided in Texas.  The complaint alleged that the sale was made to Snodgrass with design to defraud the firm's creditors ; that it was made without consideration and at a time when Chaytor & Dunn were largely indebted.  The answer denied the fraudulent purpose, but did not deny that Chaytor & Dunn were insolvent. The evidence does not disclose what consideration was paid for the goods by Snodgrass.  After the sale the goods were left in the possession of Chaytor, who continued the business.  A. O. Lewis testified :  " I am a clerk for William Snodgrass.  I have been clerking for him for about four years.  I made my contract with Mr. Chaytor.  Mr. Snodgrass comes here two or three times a year.  When he comes he goes to see Mr. Chaytor and talks to him of the business.  I do not know whether he examines the books or not, but he looks around at the stock.  I mean that he goes over the house and examines the goods.  Mr. Snodgrass has never had me take an inventory, but Mr. Chaytor had me take an inventory of the stock once a year.  *  *  * When anything is taken out of the store it is charged to Mrs. Chaytor—such as family supplies and most of the dry goods are charged to Mrs. Chaytor.  There are some things charged to Mr. Chaytor on the day books.  *  *  *  It is my understanding that the business belongs to Snodgrass ; and whenever they get in a tight, they go to Mr. Snodgrass. The goods are always shipped in Snodgrass' name."

(3)  It was charged that the title to certain lands purchased by Chaytor from Feazel in 1885 was fraudulently taken to Chaytor's wife.  In 1887, Chaytor sold the land to defendants, Mims & Moores.  Notes were taken payable to Chaytor's wife and deed executed to the vendees, reserving a vendor's lien upon its face.  The vendees purchased with

notice of all the facts. A few days afterwards the notes were transferred to Wolf & Brother as collateral security for a valid debt due by Chaytor. Wolf & Brother are not parties to this suit.

The court upon the hearing dismissed the complaint, and decreed that the mortgage of Snodgrass be foreclosed. Plaintiffs have appealed.

*F. W. & W. A. Compton* for appellants.

1. The testimony shows fraud clearly. Chaytor was insolvent, and his gift to his wife and the pretended sale to his uncle were void. Bump on Fraud. Con. (2d ed.), pp. 276, 277.

2. So, the purchase by Chaytor from Feazel, after the judgment in favor of appellants, and after the execution had been returned *nulla bona,* paying for it with his own means and causing the deed to be made to his wife, leaving in him no property to satisfy said judgment, was a fraud and void. 31 Ark., 546.

3. The retention of possession of the goods by Chaytor after the pretended sale is evidence of a secret trust and a fraud on creditors. 50 Ark., 289.

4. Plaintiff's judgment was a lien on the lands, not being his homestead. 33 Ark., 762. Mims & Moores had notice of the judgment.

5. The finding of the chancellor is against the preponderance of the evidence and should be reversed. 41 Ark., 292 ; 34 *id.,* 212.

*Scott & Jones* for appellees.

1. So far as the house and lot is concerned, there is not proof to sustain the charge, and the burden was on appellants. 42 Ark., 173 ; 196 U. S., 264 ; 59 Mo., 158. There is no proof that Chaytor or Chaytor & Dunn were insolvent, or that they owed anyone, at the time the house and lot were bought.

3. The judgment was not a lien on the Feazel lands. The conveyance from Feazel to Mrs. Chaytor was prior to

the date of appellant's judgment, and she conveyed to Mims & Moores before this suit was brought. It is true the land *might have been* subjected to their debt by proper proceedings. 43 Vt., 48. The mere notice to Mims & Moores that they intended to bring suit amounted to nothing. 2 Wall., 237; 12 Cent. L. J.; 135; Freeman on Judg. (3d ed.), 350. Citing the following to show that a judgment lien does not attach to premises transferred to defraud creditors : 6 Paige, Ch., 465; 3 Watts, 231; 67 Penn. St., 435; 35 N. J. Law, 133.

3. This case differs from the ordinary case of one who voluntarily conveys his property to hinder creditors in this, that here the title never vested in Chaytor. He purchased from Feazel and caused him to execute the deed to his (Chaytor's) wife. See 15 N. Y., 475; 9 Mich., 368; 53 Me., 45; 99 Mass., 478; 3 Metc., 28; 58 Me., 230; 5 Ala., 710; 7 Yerg., 155; 25 Vt., 564; 9 Mich., 484; Freeman on Executions, 136.

4. The sale of the lands to Mims & Moores and the transfer of the notes was simply a preference to Wolf & Brother, which he had a right to make. A fraudulent intent must be proven. 34 N. W. Rep., 366; 10 S. W. Rep., 458; 4 *id.*, 253; 8 *id.*, 564; 14 Mo., 416; 73 Mo., 74; 8 Am. Rep., 522.

5. The sale to Snodgrass was in good faith for a valuable consideration, and the testimony fails to show any fraud. Chaytor was simply put in charge as manager. 50 Ark., 280; Pom. Eq. Jur., vol. 3, sec. 1415.

1. When gift not fraudulent. MANSFIELD, J. 1. There is no error in the decree appealed from, so far as it relates to the town lot. The evidence fails to show that the defendant R. S. Chaytor or the firm of Chaytor & Dunn were indebted to any one at the time that property was conveyed to Mrs. Chaytor. And the mortgage upon it was executed several years prior to the date of the plaintiffs' judgment, and was given to secure the

payment of an undisputed and subsisting debt. The right of Snodgrass to a foreclosure was therefore clear.

2. But on the facts appearing in the record the plaintiffs were not without a claim to relief as to the other property mentioned in the complaint. The answers of Chaytor and Snodgrass deny that any fraudulent purpose was entertained in the sale to the latter of the stock of merchandise. But there is no denial of the allegation made in the complaint that Chaytor was then largely indebted to the plaintiffs and to other persons. And the proof shows that he remained in the actual possession of the goods and continued his personal management and supervision of the business. A presumption of fraud was thus raised which it devolved upon Snodgrass to overcome by proving that he paid a valuable consideration for the transfer of the goods. *Driggs' Bank* v. *Norwood,* 50 Ark., 42 ; *Valley Distilling Co.* v. *Atkins, ib.,* 289; *Norton* v. *McNutt, ante,* p. 59.

He offered no testimony whatever conducing to show such payment. He did not testify in the cause himself, and Chaytor, whose deposition was taken, made no statement from which an inference can be drawn that the sale rested upon any valuable consideration. Both of them aver in their pleadings that " a valuable and adequate consideration" existed. But they are silent as to what it consisted of. And the *prima facie* case made by the plaintiffs against the good faith of the transaction is opposed by nothing, except the fact that the business was conducted in the name of Snodgrass, and the statement of an employee of Chaytor's in its management that it was his understanding that the merchandise belonged to Snodgrass; that " all the family supplies and most of the dry goods taken from the store were charged to Mrs. Chaytor; and that when the business was embarrassed, Snodgrass was always appealed to for assistance. Little weight is to be given to these facts in view of the relationship existing between the parties and the other circumstances of the case.

We think the charge of fraud in the sale to Snodgrass is

2. When vendor's possession fraudulent.

sustained by the proof. This entitled the plaintiffs to have the conveyance of the goods to him cancelled. *Jones, Mc-Dowell & Co.* v. *A. M. & Agricultural Co.*, 38 Ark., 17, and cases cited; *Hunt* v. *Weiner*, 39 Ark., 73.

3. Creditor's lien acquired by filing complaint. The execution issued against Chaytor was returned without a levy, and there is no indication in the record that the goods were seized under any other process. But the filing of this complaint and service of the summons issued upon it created a lien in favor of the plaintiffs on so much of the merchandise transferred to Snodgrass as was then in existence. And they should have an order for the sale of this, so far as it can now be identified.

4. Gift fraudulent when. 3. It is admitted that the lands purchased of Feazel were paid for entirely with funds belonging to R. S. Chaytor. And that, at the date of their conveyance to his wife, the indebtedness of Chaytor to the plaintiffs and others continued to be large. He could not therefore have made a voluntary conveyance of his property that would not have been presumptively fraudulent. And as the evidence fails to show that he had any other property whatever, except such as was then held in the name of Snodgrass, the presumption of fraud attaching to such a conveyance would have been conclusive. *Driggs' Bank* v. *Norwood*, 50 Ark., 42; *Norton* v. *McNutt, ante*, p. 59.

5. Judgment is lien on equitable estate when. The purchase in the name of his wife can stand on no better footing; for the law regards it as in effect a conveyance from himself. *Bennett* v. *Hutson*, 33 Ark., 762. But where land is thus purchased by a husband and conveyed to his wife in fraud of his creditors, the latter would not be benefited by treating the conveyance to her as void; since the title would then remain in the grantor. And equity will therefore treat the wife in such case as a trustee for the benefit of the husband's creditors. *Hershy* v. *Latham*, 42 Ark., 305; *Belford* v. *Crane*, 84 Am. Dec., 155; Freeman on Executions, sec. 136. Applying this doctrine to the present case, an estate in the lands purchased of Feazel resulted to Chaytor on the execution of the deed to his wife. The estate which he

thus acquired was subject to sale on execution under our
statute, and the purchaser would have taken, not only the
beneficial interest in the lands, but also the legal title. *Hershy*
v. *Latham,* 42 Ark., *supra;* Mansf. Dig., sec. 3001 ; *Bennett* v.
*Hutson,* 33 Ark., *supra.* It follows, necessarily, we think,.
under the statute of this State providing for judgment liens,
that the lands in controversy, while held by Mrs. Chaytor,.
were subject to a lien existing by virtue of the plaintiffs'
judgment. Mansf. Dig., sec. 3917. This conclusion is sup-
ported by adjudicated cases directly in point, and is sus-
tained indirectly by many authorities. See *Haleys* v. *Wil-
liams,* 19 Am. Dec., 743 ; *Thomas* v. *Walker,* 6 Humph., 93 ;
*McKee* v. *Gilchrist,* 3 Watts, 230 ; Freeman on Judgments,.
sec. 350 ; Freeman on Executions, sec. 136.

Such a lien could not, however, be asserted against *"bona
fide* purchasers or encumbrancers, who have acted upon the
apparent title of the fraudulent vendee and without notice
actual or implied of the fraud." Freeman on Execution, sec.
136. But Mims & Moores were not such purchasers. They
bought subsequent to the judgment and with notice that the
plaintiffs intended to institute proceedings to subject the
lands to its payment. As against them the plaintiffs are
therefore entitled to the relief prayed for. The record pre-
sents for decision no other question. But it discloses other
facts which it is proper to notice before remanding the
cause.

It appears that on the sale to Mims & Moores a lien was
expressly reserved in the deed for the payment of the two
notes executed for the purchase money. These notes were
soon after indorsed by Mrs. Chaytor, to whose order they
were made payable, and were delivered by her husband to
Wolf & Brother in payment of a debt. This occurred after
the recovery of the plaintiff's judgment against Chaytor &
Dunn but before the institution of this suit. Under the
statute (Mansf. Dig., sec. 474) giving to the assignee of a note
for the purchase money of land the benefit of the vendor's
lien where such lien is expressed or appears on the face of

·the deed, Wolf & Brother were thus placed in the attitude of intervening mortgagees; and if they were innocent encum·brancers without notice of the plaintiffs' equitable right against Mims & Moores, they acquired a lien prior to that of the plaintiffs to the extent of the amount due on the notes. The plaintiffs should be permitted to make Wolf & Brother parties or to proceed subject to the rights of the latter, as they may elect.

The decree of foreclosure is affirmed. In other respects the judgment is reversed, and the cause remanded for proceedings in accordance with this opinion.