PARROTT ET AL VS CRAWFORD.

Opinion delivered October 19, 1904.

1. *Injunction—Equity—Pleading Where Defendant Seeks Affirmative Relief.*

It is the better practice, where affirmative relief is asked by defendant in an equitable proceeding, to file a cross-bill.

2. *Injunction—Against Execution Sale—Defendant Urging Fraudulent Conveyance—Sufficiency of Pleading.*

In an action to enjoin the execution sale of certain property under judgment obtained by the defendant against plaintiff's grantor, where the defendant seeks to have the conveyance to plaintiff set aside as fraudulent and the property sold, his pleading must contain all averments necessary to sustain a creditor's bill against plaintiff and his grantor, and must affirmatively show that the conveyance was subsequent to the creation of the indebtedness and that the judgment debtor has no other property subject to the execution.

3. *Judgment Lien—None on Lands Fraudulently Conveyed Prior to Judgment*

Under Sec. 3001 Mansf. Dig. (2116 Ind. T. Stat.) a judgment creditor has a lien and may have execution upon real estate "whereof the

defendant is seized in law or equity on the day of the rendition of the judgment." Of lands conveyed prior to such judgment, even though fraudulently conveyed, the defendant is not "seized in law or equity," and same are neither subject to a judgment lien nor to sale upon execution.

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Suit by W. A. Crawford against W. H. Parrott and another. Judgment for plaintiff. Defendants appeal. Affirmed.

This is a bill in equity, filed by W. A. Crawford, appellee, against W. H. Parrott and Leo E. Bennett, United States marshal for the Northern District of the Indian Territory, appellants, seeking to enjoin the sale of certain real estate claimed by him, levied on by the marshal as the property of one J. C. Crawford. The bill is as follows: "Comes now your orator, W. A. Crawford, and, complaining of said defendants, W. H. Parrott and Leo E. Bennett, United States marshal for the Northern District of the Indian Territory, humbly show unto your honor that he is a resident of the Northern District of the Indian Territory, and that said defendant W. H. Parrott is a resident of the Northern District of the Indian Territory, residing at Miami, and that the said Leo E. Bennett is the regularly appointed, qualified, and acting United States marshal for the Northern District of the Indian Territory. And your orator, further complaining, shows unto your honor that on the 5th day of March, A. D. 1900, there was issued out of this honorable court an execution on a judgment in a case pending in ths honorable court wheren W. H. Parrott is plantiff and J. C. Crawford is defendant, commanding and directing the said Leo

E. Bennett, United States marshal, as aforesaid, to levy upon and sell any personal or real property belonging to said defendant J. C. Crawford to satisfy the judgment in favor of said plaintiff in the sum of one hundred fifteen dollars and eighty-five cents and costs. And your orator further represents and shows that the said United States marshal, without any authority in law or equity, and contrary to the rights of your orator herein, and acting by and under the direction of said W. H. Parrott, did levy upon and advertise for sale certan property in the town of Miami, to wit: One dwelling house and barn and lots numbered one, nine, ten, eleven, and twelve in block thirty-one in the original town of Miami, and did then and there proceed to advertise said property for sale on the 10th day of April, A. D. 1900. And your orator further represents and shows unto this honorable court that he is the owner of said property by purchase, and that the title to said property is in him as evidenced by a certain warranty deed executed by the said J. C. Crawford and his wife' B. C. Crawford, on the 24th day of April, A. D. 1899, which said deed is of public record in the office of the clerk for the Northern District of the United States Court in the Indian Territory at Miami, and that your orator ever since the 24th day of April, A.D. 1899, has been and is now the owner thereof, and has been and is now in the quiet and peaceable possession of said premises, and that the said J. C. Crawford has no right, title, or interest in or to the same, and has not had since the 24th day of April, A. D. 1899, and which was prior to the institution of said suit by the sad W. H. Parrott aganst the said J. C. Crawford. And your orator further avers that the sale of said property under said execution will work an irreparable injury to your orator, and will cast a cloud upon his title, and that, inasmuch as his remedy at law is absolutely inadequate and ineffectual and inefficient, and whereas relief can only be had in a court of equity, your orator prays that a temporary injunction or restraining order issue out of this honorable court enjoining and restraining said

W. H. Parrott and the said Leo E. Bennett, United States marshal of the Northern District of the Indian Territory as aforesaid, or any person acting by, through, or under them, or either of them, from selling, conveying, or transferring said property or in any way interfering with or molesting the quiet possession of said property under and by virtue of any execution or in any manner whatsoever. And your orator prays for such further and other relief as in equity and good conscience he may be entitled." Upon presentation of the bill to the court in vacation a temporary injunction was granted. There was an answer filed by defendants, as follows: "Come now the above-named defendants, and for answer herein say that they admit that on the 5th day of March, A. D. 1900, there was issued out of this honorable court an execution on a judgment pending in this honorable court wherein W. H. Parrott was plaintiff and J. C. Crawford is defendant, commanding and directing that said Leo E. Bennett, United States marshal, to levy upon and sell any personal or real property belonging to said defendant J. C. Crawford to satisfy the judgment in favor of said plaintiff in the sum of one hundred fifteen dollars and eighty-five cents ($115.85) and that said United States marshal, under the direction of W. H. Parrott, did levy upon and advertise for sale the property described in plaintiff's complaint. Defendants deny that said W. A. Crawford is the owner of said property for value, but allege that the transfer mentioned in plaintiffs' complaint from the said J. C. Crawford to the plaintiff herein was not made for value, but that the same was made with the fraudulent intent to hinder and delay and defraud the creditors of the said J. C. Crawford; that said conveyance was made to plaintiff without his paying any consideration therefor, and to cover up the property so same could not be reached by the creditors of said J. C. Crawford, all of which plaintiff well knew, and said conveyance was therefore void; that defendants have, under and by virtue of said execution, the right to levy upon and sell said

property.   Therefore defendants ask that the temporary injunction heretofore granted be dissolved, and that the deed mentioned in plaintiff's complaint from J. C. Crawford and wife to W. A. Crawford be declared fraudulent as against creditors, and the same be canceled, and that they have judgment for their costs laid out and expended herein."   To this answer the following demurrer was filed:  "Comes now the above-named plaintiff, W. A. Crawford, by his attorneys, P. L. Soper and N. L. Rider, and demurs to the answer of said defendant, and for grounds of his demurrer says:   (1)   That said answer does not state facts sufficient to constitute a defense to this action." The demurrer was sustained, and, respondents declining to further plead, a decree was entered making the temporary injunction permanent, and there was an appeal by defendants to this court.

*H. H. McClure* and *S. C. Fullerton*, for appellants.

*P. L. Soper* and *N. L. Rider*, for appellee.

RAYMOND, C. J.   No lawsuit presented at this term so emphasizes the importance to lawyers and litigants of careful and well-considered pleading as the one under consideration. The pleading filed by respondents first admits certain allegations of the bill, then contains a denial of others, and then charges a fraudulent transfer by complainant's grantor, and asks relief. No cross-bill is filed, unless the mere prayer to have complainant's deed from defendants' judgment debtor canceled may be taken as equivalent to the filing of a cross-bill or complaint. "Where a defendant in an action on the equity docket seeks affirmative relief, he should file a cross-bill."   Estee's Code Pleading, vol. 3, § 4551; Marr vs Lewis, 31 Ark. 203, 25 Am. Rep. 553.   Mr. Phillips, in his work on Code Pleading, in discussing the subject as to how cross-demands should be pleaded,

says: "When a defendant seeks affirmative relief, he becomes, quoad hoc, a plaintiff, and must state the facts constituting his right of action in the same manner and with the same degree of particularity that would be requisite if he were stating them in a complaint, except that he may refer to and adopt matters stated in the complaint. * * * In matter of form, the cross-demand should be stated separately from matters of mere defense; and even where the same facts constitute both a defense and a counterclaim some authorities hold that they should be twice stated in separate divisions. In no other way can their sufficiency in each aspect be separately questioned or determined. If matters of defense and matters of cross-demand are commingled in one statement, it is a defect of form. * * * In order that the plaintiff may know what use the defendant intends to make of his alleged facts, he should in some way indicate his purpose to rely upon certain allegations for affirmative relief; and in most jurisdictions this is required." Phillips on Code Pleading, § 260. Mr. Estee, in discussing the same subject, uses the following language: "In California the usual practice is, at the conclusion of the matter pleaded by way of answer to state, 'And the defendant, A. B. by way of cross-complaint against the plaintiff, alleges,' etc., the signature of the attorneys and verification following at the end of the whole pleading. In such case the verification should be that he has read the foregoing answer and cross-complaint, and that the same and each of them are true, etc. The better mode of pleading is to conclude and verify the answer, and prepare the cross-complaint as a separate pleading. If the cross-complaint seeks relief against codefendants alone, or against the plaintiff and one or more defendants, it is eminently proper that it should be a separate pleading. * * * It seems to be essential that the name 'cross-complaint' be given to this pleading, or at least that it should not be misnamed." Estee's Pleadings, vol. 3, § 4555. "A cross-complaint must state all the facts which would·

be required in an original complaint, to entitle the party plead-
ing it to affirmative relief, and it cannot be aided by the aver-
ment of any other pleading in the action." Estee's Pleadings,
vol. 3, § 4554. It would therefore seem to be the better practice,
where affirmative relief is asked in equity, to file a cross-bill.

But waiving the question as to whether or not there
should have been a separate cross-bill or a statement in the
answer that by way of cross-complaint the defendant makes
certain averments and prays for certain relief, there can be no
serious contention but that the answer wherein it is sought to
cancel the alleged fraudulent conveyance made by J. C. Craw-
ford, defendant's judgment debtor, to the complainant, W. A.
Crawford, should contain all of the averments necessary to
sustain a creditors' bill filed by appellant Parrott against the
Crawfords. Smith, Equitable Remedies of Creditors, p. 122.
What averments are necessary? That complainant has secured
a judgment against his debtor, or some legal reason shown why
it cannot be had. Smith, Equitable Remedies of Creditors, §
158. That an execution has issued upon the judgment thus
obtained. Morrow Shoe Manufacturing Co. vs New England
Shoe Co. et al., 57 Fed. 685, 6 C. C. A. 508, 24 L. R. A. 417.
That there has been a return of the execution by the proper
officer nulla bona. Meux vs Anthony et al., 11 Ark. 411, 52
Am. Dec. 274. That the defendant in the execution has con-
veyed the premises to defendant in the creditors' suit
for the purpose of hindering, delaying, defrauding,
or defeating his creditors (stating clearly in what manner
and by what means, and, if fraud is alleged, state fully all the
facts constituting the alleged [fraud, so that the court, from
the facts alleged, can determine as to whether or not they con-
stitute fraud in law). A mere conclusion of the pleader is not
sufficient. Loucheim vs Talladega First National Bank (Ala.)
13 So. 374. That the grantee was a party to the fraud, or had

knowledge of the purpose of the grantor in making the conveyance. That the indebtedness of the judgment debtor to complainant accrued prior to the date of the alleged fraudulent conveyance: Michael Moritz vs Francis A. Hoffman, 35 Ill. 553. That the judgment debtor is insolvent, and has no other property out of which he can make his judgment, and a prayer for the proper relief. "In order that a recovery may be had under a bill filed to set aside a conveyance alleged to have been fraudulent as to creditors, it is incumbent on the plaintiff to show that the property conveyed was substantially all of the debtor's property, or that at the time of the conveyance he was insolvent, or was rendered so by the conveyance. If it does not so appear, the bill will not be sustained." Smith's Equitable Remedies of Creditors, p . 40; Kain vs Larkin, 131 N. Y. 300, 30 N. E. 105.

Measured by these requirements, do the allegations made by the defendants suffice? It will be seen at a glance that there are some defects which are fatal, and that it falls short of coming up to these standards. There is no allegation that the indebtedness of J. C. Crawford to Parrott was contracted prior to the alleged fraudulent conveyance. "If the appellant at the time of the conveyance was not a creditor, then he had no standing in a court of equity, and cannot attack the conveyance, unless it is shown that the conveyance was made by the debtor with the expectation of incurring heavy liabilities which he would not be able to meet." Cunningham vs Williams, 42 Ark. 170. "The plaintiff must allege that he is a creditor of the debtor defendant, and, where the object of attack is the fraudulent alienation of property, he must, generally, show the existence of the indebtedness at the time the transfer was made." Smith's Equitable Remedies of Creditors, p. 123, and cases cited therein. There is no allegation that the execution was returned nulla bona. "The exhaustion of legal remedies should

be alleged, which is usually done in this class of actions by showing a judgment in force and effect, an execution issued thereon, and a return thereon nulla bona." Smith's Equitable Remedies of Creditors, § 100, p. 123. There is no allegation that the judgment debtor is insolvent. For aught that appears, he may have ample means out of which the judgment could be made. Kain vs Larkin, supra. "The complaint is bad for the reason that it fails to allege that the alleged fraudulent grantor had no property subject to execution at the time the suit was commenced. It is settled law in this jurisdiction that a complaint to set aside a fraudulent conveyance is bad unless it shows that at the time the suit was commenced as well as at the time the conveyance was made, the grantor had no property subject to execution. The reason for the rule is that a plaintiff has no right to subject property in the hands of a grantee of his debtor to sale unless it appears that there is no other property which can be reached by ordinary legal process. The question is one of pleading, and not of process." Line et al vs State ex rel. Lander (Ind. Sup.) 30 N. E. 703. The statute in force in this jurisdiction provides: "The following described property shall be liable to be seized and sold under any execution upon any judgment, order, or decree of a court of record: * * * Sixth. All real estate, whether patented or not, whereof the defendant, or any person for his use, was seized in law or equity on the day of rendition of the judgment, order or decree whereon execution issued, or at any time thereafter." Mansf. Dig. § 3001 (Ind. Ter. St. 1899, § 2116). The record in this case shows that the transfer from J. C. Crawford and wife to appellee was made on the 26th day of April, 1899— almost a year before the issuance of the execution and levy upon the property. This transfer, whether fraudulently made or not, divested J. C. Crawford of all the right, title, or interest he may have in the property. The Supreme Court of Arkansas, in the case of Doster vs Manistee National Bank, 55 S. W. 138, 48 L. R. A.

334, 77 Am. St. Rep. 116, in passing upon this question, says: "The statute gives a lien from the day of the rendition of the judgment upon the real estate owned by the defendant, or whereof he, or any person for his use, is seised in law or equity. Where a debtor has fraudulently conveyed his real estate before any judgment is rendered against him, or has procured same to be fraudulently conveyed to another, he is not in any sense the owner of such real estate, nor is he thereafter seised in law or equity of such real estate, nor is the grantee seised for his use. The authorities generally recognize the fact that a deed to land, although fraudulently conveyed, carries the title of the grantor. The deed is good inter partes"—citing Meux vs Anthony, 11 Ark. 411, 52 Am. Dec. 274; Millington vs Hill, 47 Ark. 309, 1 S. W. 547; Bell vs Wilson, 52 Ark. 309, 12 S. W. 328, 5 L. R. A. 370; Bump, Fraud. Convey. §§ 432, 433, Wait, Fraud. Convey. 395-399; 8 Am. and Eng. Enc. Law (1st Ed.) p. 771; and authorities cited by these. "The fraudulent grantee gets a title that he can alienate, and by so doing confer a perfect title upon his alienee, if the alienee be an innocent purchaser for value. This is the doctrine of our own court and of nearly all the states. Ringgold vs Waggoner, 14 Ark. 69; Stix vs Chaytor, 55 Ark. 116-123, 17 S. W. 707; Wait, Fraud. Convey. 386; Bump, Fraud. Convey. 492; and numerous authorities cited. Of course, this would not be possible if the conveyance of the fraudulent grantor did not carry the title to the fraudulent grantee. It follows, then, logically and necessarily, that under this statute alone the judgment creditor has no lien upon lands fraudulently conveyed by the debtor prior to the rendition of his judgment. This construction certainly conforms to the plain and unequivocal language of the act. Why should we so change and extend it as to make it apply to lands which the defendant, at the time of the rendition of the judgment, did not own, and of which neither he, nor any one for him, was seised in law or equity? To so construe it would be judicial legislation,

and that, too, with unjust results, because, 'when the law gives priority, equity will follow it.' " In speaking of section 3472 of Sandels & Hill's Digest of Arkansas which is section 3374 of Mansfield's Digest (Ind. Ter. St. 1899, § 2308), and which is as follows: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action, or of any rents issuing therefor, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers, prior and subsequent, shall be void"—the court in the above case said: "If the latter statute is to be taken as in pari materia with the statute under consideration as between judgment creditors and their debtors, still that cannot aid appellant. Ever since the passage of 13 Eliz., after which our statute as to fraudulent conveyances was modeled, the word 'void,' as therein used has generally been held to mean 'voidable.' Mew. Eng. Cas. Law Dig. 338, and authorities collected; Pom. Cont. § 451, and authorities cited; Bump, Fraud. Conv. § 451, and authorities cited in note 1. As we have seen, supra, such is the view of our own court, and this is undoubtedly correct, for every fraudulent conveyance carries the legal title, subject only to defeasance by creditors and purchasers. Such conveyance is not void per se, even as between debtor and creditor. If the creditor condones the fraud, and takes no steps to avoid the conveyance, it stands forever as a divestiture of the title of the debtor." In the case of Ewell vs Daggs, 108 U. S. 148, 2 Sup. Ct. 412, 27 L. Ed. 682, the Supreme Court of the United States, in passing upon the use of the word "void" as used in such statutes, says: "It is quite true that the usury statute referred to declares the contract of a loan, so far as the whole interest is concerned, to be 'void and of no effect.' But

(9)

these words are often used in statutes and legal documents, such as deeds, leases, bonds, mortgages, and others, in the sense of 'voidable' merely—that is, capable of being avoided—and not as meaning that the act or transaction is absolutely a nullity, as if it never had existed, incapable of giving rise to any rights or obligations under any circumstances. Thus we speak of conveyances being void as to creditors, meaning that creditors may avoid them, but not others." In passing upon the question of whether a conveyance of a debtor, fraudulently made, passed the title to the grantee, the Supreme Court of the United States, in the case of Miller vs Sherry, 2 Wall. 249, 17 L. Ed. 827, said: "It is not contended that the judgment was a lien on the premises. The legal title having passed from the judgment debtor before its rendition, by a deed valid as between him and his grantee, it could not have that effect by operation of law." All the authorities which recognize the right of a creditor to disregard the transfer by the debtor to a third person and levy upon the premises the same as if no transfer had been made, construe the word "void "to mean absolutely void, and the Supreme Court of Arkansas, in passing upon this matter in the case of Doster vs Manistee National Bank, supra, says: "The courts which fall into such glaring incongruities in prescribing the remedies under this statute are no more discriminating, logical, and consistent when discussing the principles upon which the rights are founded giving rise to the remedies. Al the authorities which hold that a judgment creditor has a judgment lien upon land which has been fraudulently conveyed by the debtor prior to the date of the rendition of the judgment are grounded upon the egregious fallacy that a fraudulent conveyance is not voidable merely, but absolutely void." At the time of the rendition of judgment against J. C. Crawford he was not seised in law or equity of the premises described in the comcomplaint. He had conveyed the title to these premises to W. A. Crawford, as shown in the pleadings, nearly a year prior to the

issuing of the execution.   If the indebtedness represented by the judgment had been incurred and credit given on the strength of the title to the premises in J. C. Crawford, surely such an important averment would not have been omitted by defendant

It is the opinion of the court that the decision of the trial court was correct in sustaining the demurrer, and the judgment isaffirmed.

CLAYTON and TOWNSEND, JJ., concur.